SEALED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 19 cr 10074

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) ) ) |
| MARK RIDDELL, | ) ) ) |
| Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Violations:

Count One: Conspiracy to Commit Mail
Fraud and Honest Services Mail Fraud
(18 U.S.C. § 1349)

Count Two: Conspiracy to Commit
Money Laundering
(18 U.S.C. § 1956(h))

Forfeiture Allegation:
(18 U.S.C. § 981(a)(1)(C) and
28 U.S.C. § 2461(c))

Money Laundering Forfeiture Allegation:
(18 U.S.C. § 982(a)(1))

U.S. DISTRICT COURT
DISTRICT OF MASS.

2019 FEB 28  PM 4: 03

FILED
IN CLERKS OFFICE

INFORMATION

At all times relevant to this Information:

General Allegations

1.    The defendant, MARK RIDDELL, was a resident of Palmetto, Florida.

2.    William Rick Singer, was a resident, variously, of Sacramento and Newport Beach,

California.   Singer owned the Edge College & Career Network, LLC and served as chief

executive officer of the Key Worldwide Foundation.

3.    The Edge College & Career Network, LLC, also known as "The Key," was a for-

profit college counseling and preparation business that Singer founded in or about 2007 and

incorporated in the State of California in or about 2012.

4.     The Key Worldwide Foundation ("KWF") was a non-profit corporation in Newport Beach, California that Singer established as a purported charity in or about 2012.   In or about 2013, the Internal Revenue Service ("IRS") approved KWF as an exempt organization under Section 501(c)(3) of the Internal Revenue Code, meaning that KWF was exempt from paying federal income tax.   KWF maintained several bank accounts (collectively, the "KWF charitable accounts").

5.     ACT, Inc. is a non-profit organization headquartered in Iowa City, Iowa that administers the ACT exam, a standardized test that is widely used as part of the college admissions process in the United States.

6.     The College Board is a non-profit organization headquartered in New York, New York.   Together with Educational Testing Service ("ETS"), a nonprofit organization headquartered in Lawrence Township, New Jersey, the College Board develops and administers the SAT, a standardized test that, like the ACT exam, is widely used as part of the college admissions process in the United States.   The College Board and ETS also develop and administer SAT subject tests, which are also used as part of the college admissions process.

7.     Parent 1 had a son who attended high school in the Los Angeles, California area.

<u>Background on Standardized Testing</u>

8.     Most selective colleges in the United States require students to take a standardized test, such as the ACT or the SAT, as part of the admissions process.

9.     The ACT includes sections on English, mathematics, reading and science.

10.     The SAT includes sections on writing, critical reading and mathematics.

2

11.     The ACT and the SAT are typically administered to large groups of students on specified dates and under strict time limits.  In some instances, however, students with certain learning or other disabilities may qualify for extended time and, in such circumstances, may take the test alone, under the supervision of a test administrator retained by ACT, Inc. or the College Board.

12.     Prior to administering the ACT, test administrators must typically certify that they will administer the exam in accordance with the ACT Administration Manual, and that they will ensure that the "test materials are kept secure and confidential, used for this examinee only, and returned to ACT immediately after testing."

13.     Similarly, prior to administering the SAT exam, test administrators must typically certify that they will administer the test in accordance with the SAT coordinator's manual, that the SAT test is the property of the College Board, and that no one other than the student can "open the test book and see the test content."

14.     The ACT tests are sent to and from the testing sites via Federal Express, a private, interstate commercial carrier.

15.     The SAT tests are sent to and from the testing sites via United Parcel Service ("UPS"), a private, interstate commercial carrier.

## The Conspiracy

16.     From in or about 2011 through in or about February 2019, RIDDELL conspired with Singer and others known and unknown to the United States Attorney to commit mail fraud and honest services mail fraud by (1) cheating on college entrance exams by bribing test administrators to allow RIDDELL to secretly take the exams in place of actual students, or to

3

replace the students' exam responses with his own; and (2) using the façade of a charitable organization to conceal the nature and source of the bribes to the test administrators and the payments to RIDDELL.

Purposes and Objects of the Conspiracy

17.     The principal purposes and objects of the conspiracy included the following:

a.      to cheat on college entrance exams on behalf of the children of SINGER's clients; and

b.      to enrich RIDDELL, Singer and their co-conspirators personally.

Manner and Means of the Conspiracy

18.     Among the manner and means by which RIDDELL, Singer and others known and unknown to the United States Attorney carried out the conspiracy were the following:

a.      cheating on the SAT and ACT exams by bribing test administrators to allow RIDDELL to secretly take the exams in place of actual students, or to replace the students' exam responses with his own; and,

b.      concealing the nature and source of the bribe payments to the test administrators and the payments to RIDDELL by funneling those payments through the KWF charitable accounts.

Acts in Furtherance of the Conspiracy

19.     On various dates between 2012 and February 2019, RIDDELL, Singer and others known and unknown to the United States Attorney committed and caused to be committed the following acts, among others, in furtherance of the conspiracy:

20.     Singer agreed with parents whose children were scheduled to take the SAT or ACT exam as part of the college admissions process to secretly have RIDDELL either take the test in place of their children, or to correct their children's answers after the children had completed the test.

21.     To facilitate the cheating, Singer counseled parents to seek extended time on the exams, including by having their children purport to have learning disabilities in order to obtain medical documentation that ACT, Inc. and the College Board typically required before granting students extended time.

22.     In exchange for Singer's and RIDDELL's assistance with the cheating, the parents typically made a purported charitable donation to KWF.

23.     Singer used the purported charitable donations, at least in part, to bribe two SAT and ACT test administrators:  Test Administrator 1, who administered the exams at a private school in Los Angeles, California, and Test Administrator 2, who administered the exams at a public high school in Houston, Texas.

24.     Singer typically caused Test Administrator 1 to be paid $10,000 from one of the KWF charitable accounts for each student who took the exam at his school.   Singer initially paid Test Administrator 2 through a third party but in July 2018, Singer sent Test Administrator 2 a $5,000 check for administering the test to a student.

25.     In exchange for the bribe payments, Test Administrators 1 and 2 allowed RIDDELL to secretly take the ACT and SAT tests in place of the children of Singer's clients, or to replace the children's exam responses with his own, in violation of the duty of honest services Test Administrators 1 and 2 owed to ACT, Inc. and the College Board.

26.     Singer typically caused RIDDELL to be paid $10,000 per test, usually from one of the KWF charitable accounts.

27.     Test Administrators 1 and 2 caused the falsified exams to be returned to ACT, Inc. and the College Board via Federal Express and UPS, respectively, so that they could be scored.

28.     For example:

a.      In or about June 2018, Parent 1 agreed with Singer to have Parent 1's son take the ACT exam the following month at a public high school in Houston, Texas, where the exam would be administered by Test Administrator 2.

b.      Singer and Parent 1 further agreed that Parent 1 would make a payment of $50,000 to one of the KWF charitable accounts, and that Singer would use the money, at least in part, to pay RIDDELL to secretly correct the son's answers after he had completed the test, as well as to bribe Test Administrator 2 to allow RIDDELL to do so, thereby ensuring that Parent 1's son would receive a high score.

c.      On or about July 12, 2018, Parent 1's son fell ill and became unable to travel to Houston as planned.

d.      Accordingly, Singer and Parent 1 agreed to have RIDDELL take the exam in place of Parent 1's son.

e.      On or about July 13, 2018, Parent 1 provided Singer with an exemplar of Parent 1's son's handwriting so that RIDDELL could imitate it when taking the exam in his place.

f.      Singer sent the handwriting exemplar to RIDDELL, who flew to Houston from Tampa, Florida later that same day.

6

      g.      On or about July 14, 2018, Test Administrator 2 provided the ACT exam to RIDDELL, who completed the exam in his hotel room.

      h.      After the exam, RIDDELL called Singer and predicted that he would score a 35 out of 36 on the ACT exam.   RIDDELL then flew home to Tampa, Florida.

      i.      On or about July 15, 2018, Singer mailed Test Administrator 2 a check for $5,000, and later mailed RIDDELL a check for $10,000, drawn on one of the KWF charitable accounts.

      j.      Test Administrator 2 sent the completed ACT exam to the ACT for scoring.

      k.      RIDDELL scored a 35 on the exam that he took in place of Parent 1's son.

      l.      On or about July 18, 2018, Parent 1 wired $35,000 to one of the KWF charitable accounts as a partial payment toward the agreed-upon fee of $50,000.

COUNT ONE

Conspiracy to Commit Mail Fraud and Honest Services Mail Fraud

(18 U.S.C. § 1349)

The United States Attorney charges:

29.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-28 of this Information.

30.     From in or about 2011, and continuing through in or about February 2019, in the District of Massachusetts and elsewhere, the defendant,

MARK RIDDELL,

conspired with William Rick Singer and others known and unknown to the United States Attorney to commit mail fraud and honest services mail fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property, to wit, testing materials and test scores of the ACT and the College Board, by means of materially false and fraudulent pretenses, representations and promises, and to deprive the ACT and College Board of their right to the honest services of Test Administrators 1 and 2 through bribes and kickbacks, did, for the purpose of executing and attempting to execute the scheme, deposit and cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, to wit, falsified ACT and SAT exams that RIDDELL secretly took or corrected, in violation of Title 18, United States Code, Sections 1341 and 1346.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
Conspiracy to Commit Money Laundering
(18 U.S.C. § 1956(h))

The United States Attorney further charges:

31.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-28 of this Information.

32.     From in or about 2013 and continuing through in or about February 2019, in the District of Massachusetts and elsewhere, the defendant,

MARK RIDDELL,

conspired with Singer and others known and unknown to the United States Attorney to conduct and attempt to conduct financial transactions, to wit, payments to RIDDELL to cheat on college entrance exams, and to test administrators to allow such cheating in violation of their duty of honest services to ACT, Inc. and the College Board, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, mail fraud, honest services mail fraud and conspiracy to commit those crimes, in violation of Title 18, United States Code, Sections 1341, 1346 and 1349, and wire fraud and honest services wire fraud, in violation of Title 18, United States Code, Section 1343, 1346 and 1349, knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

9

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges that:

33.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1349, set forth in Count 1 of this Information, the defendant,

### MARK RIDDELL,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.   The property to be forfeited includes, but is not limited to, the following assets:

   a.   $239,449.42 to be entered in the form of a forfeiture money judgment.

34.     If any of the property described in Paragraph 33, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the Court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 33 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(1))

The United States Attorney further alleges that:

35.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1956(h), set forth in Count Two of this Information, the defendant,

### MARK RIDDELL,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

    a.  $207,698.21, to be entered in the form of a money judgment.

36.     If any of the property described in Paragraph 35 above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b),

12

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 35 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).


ANDREW E. LELLING
UNITED STATES ATTORNEY

By:

ERIC S. ROSEN
Assistant U.S. Attorney

Date: February 28, 2019


13