1            IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF MASSACHUSETTS

3

4

```
     * * * * * * * * * * * *    19CR10074-NMG
UNITED STATES OF AMERICA*
                        *
VS.                     *    APRIL 12, 2019
                        *    2:38 P.M.
MARK RIDDELL            *
                        *
* * * * * * * * * * * *    BOSTON, MA
```

9

10       BEFORE THE HONORABLE NATHANIEL M. GORTON

11              DISTRICT JUDGE

12             (Rule 11 Hearing)

13

14  **APPEARANCES**:

15

16  FOR THE GOVERNMENT:    ERIC S. ROSEN, AUSA
                       JUSTIN D. O'CONNELL, AUSA
                       LESLIE WRIGHT, AUSA
17                       United States Attorney's Office
                       1 Courthouse Way
18                       Suite 9200
                       Boston, MA 02210
19

20  FOR THE DEFENDANT:     BENJAMIN STECHSCHULTE, ESQ.
                       Stechschulte Nell, PL
                       1105 W. Swann Ave.
21                       Tampa, FL  33601

22  Court Reporter:        Debra D. Lajoie, RPR-FCRR-CRI-RMR
                       1 Courthouse Way
23                       Boston, MA  02210

24

25            Proceeding reported and produced
             by computer-aided stenography

1    12 APRIL 2019 -- 2:38 P.M.

2           THE CLERK:  This is Criminal Action

3    No. 19-10074, the United States of America v.

4    Mark Riddell.

5           Will counsel please identify themselves for

6    record.

7           MR. ROSEN:  Good afternoon, Your Honor.

8    Eric Rosen, Justin O'Connell and Leslie Wright for the

9    Government.

10          THE COURT:  Good afternoon, Mr. Rosen,

11   Mr. O'Connell, Ms. Wright.

12          MR. STECHSCHULTE:  Good afternoon, Your Honor.

13   Ben Stechschulte representing Mr. Riddell.

14          THE COURT:  Mr. Stechschulte, is that how you

15   pronounce it?

16          MR. STECHSCHULTE:  That's correct, Your Honor.

17          THE COURT:  Mr. Stechschulte, good afternoon.

18          And we also have Mr. Riddell.  Good afternoon to

19   you.

20          We have some members of Probation Department

21   here with us today, Ms. Victoria and Ms. Hennemann.

22   Thank you.

23          We're here, as I understand it,

24   Mr. Stechschulte, to have your client plead to an

25   information; is that correct?

1          MR. STECHSCHULTE:  That's correct, Your Honor.

2          THE COURT:  Then, if he would take the witness

3     stand, you may join him if you wish.

4          THE CLERK:  Would you please remain standing and

5     raise your right hand.

6          (The Defendant Was Sworn)

7          THE CLERK:  Thank you.  You may be seated.

8          MR. STECHSCHULTE:  And Your Honor, may I grab a

9     chair?

10          THE COURT:  Yes, of course.

11          MR. STECHSCHULTE:  Okay.  Thank you, Your Honor.

12          THE COURT:  Good afternoon again, Mr. Riddell.

13          Do you understand that you have a Constitutional

14     right to be charged by an indictment of a Grand Jury

15     but that you can waive that right and consent to be

16     charged by what is called an information of the

17     United States Attorney?  Do you understand that?

18          THE DEFENDANT:  Yes, I understand that,

19     Your Honor.

20          THE COURT:  Now, instead of by indictment, these

21     felony charges against you have been brought by the

22     United States Attorney by the filing of an information.

23     Unless you waive indictment, you may not be charged

24     with a felony unless a Grand Jury finds by a return of

25     an indictment that there is probable cause to believe

1    that a crime has been committed and you have committed

2    it.

3         If you do not waive the indictment, the

4    Government may present the case to the Grand Jury and

5    request it to indict you; do you understand that?

6         THE DEFENDANT:  I do understand that,

7    Your Honor.

8         THE COURT:  Now, a Grand Jury is composed of at

9    least 16 but not more than 23 persons.  At least 12 of

10   those Grand Jurors must find that there is probable

11   cause to believe that you committed the crime with

12   which you are charged before you can be indicted.  The

13   Grand Jury might or might not indict you.

14        And if you waive indictment by the Grand Jury,

15   the case will proceed against you on the United States

16   Attorney's information just as though you had been

17   indicted; do you understand that?

18        THE DEFENDANT:  I do.

19        THE COURT:  Now, have you discussed the matter

20   of waiving your right to indictment by the Grand Jury

21   with your attorney, and do you understand that you have

22   such a right?

23        THE DEFENDANT:  Yes, I have.  I have discussed

24   it, and I do understand I have the right.

25        THE COURT:  And have any threats or promises

1    been made to induce to you waive that right?

2         THE DEFENDANT:  No.

3         THE COURT:  And do you now wish in open court to

4    waive your right to indictment by a Grand Jury?

5         THE DEFENDANT:  I do.

6         THE COURT:  And Mr. Stechschulte, do you have

7    any reason to understand or any reason to believe your

8    client should not do so?

9         MR. STECHSCHULTE:  No, Your Honor.

10        THE COURT:  All right.  Have you signed the

11   written waiver?

12        MR. STECHSCHULTE:  We have, Your Honor.

13        THE COURT:  All right.  Then, it is this Court's

14   finding that the Defendant's waiver of indictment is

15   made knowingly and voluntarily, and therefore the

16   Defendant's waiver of indictment is accepted by the

17   Court.

18        Now, Mr. Riddell, do you understand that you are

19   now under oath and that, if you answer any of my

20   questions falsely, those answers may later be used

21   against you in a prosecution for perjury or making a

22   false statement?  Do you understand that?

23        THE DEFENDANT:  I understand that, Your Honor.

24        THE COURT:  Would you please state your full

25   name for the record.

1      THE DEFENDANT:  My name is --

2      THE COURT:  You don't have to worry about that

3  microphone.  I can hear you just fine.

4      THE DEFENDANT:  I'm sorry.  Okay.

5      Mark Riddell.

6      THE COURT:  And how old are you, Mr. Riddell?

7      THE DEFENDANT:  36.

8      THE COURT:  And what is your educational

9  background?

10      THE DEFENDANT:  I have an undergraduate degree

11  in biological sciences from Harvard.

12      THE COURT:  All right.  Are you presently -- or

13  have you ever been treated for any mental illness or

14  addiction to narcotic drugs of any kind?

15      THE DEFENDANT:  No.

16      THE COURT:  Are you presently under the

17  influence of any drug, medication or alcoholic beverage

18  of any kind?

19      THE DEFENDANT:  No.

20      THE COURT:  Have you received a copy of the --

21  if at any time you want to talk to your lawyer about

22  your answers, you may do so outside of my hearing.  So

23  just let me know, and you can do that; all right?

24      THE DEFENDANT:  Okay.

25      MR. STECHSCHULTE:  Your Honor, may I have a

1    moment just briefly?

2            THE COURT:  Yes.

3            (Pause)

4            THE DEFENDANT:  Sorry, Your Honor.

5            THE COURT:  Now, have you received a copy of the

6    information pending against you; that is, the written

7    charges made against you, and have you discussed the

8    charges and the case in general with Mr. Stechschulte

9    as your lawyer?

10           THE DEFENDANT:  Yes, I have, Your Honor.

11           THE COURT:  And in your own words, Mr. Riddell,

12   what do you understand that you're being charged with

13   here this afternoon?

14           THE DEFENDANT:  I'm being charged with

15   conspiracy to commit fraud for cheating on SAT and ACT.

16           THE COURT:  All right.  Are you fully satisfied

17   with the counsel, representation and advice given to

18   you by Mr. Stechschulte as your lawyer?

19           THE DEFENDANT:  Yes, Your Honor, I am.

20           THE COURT:  Now, I understand a written plea

21   agreement has been entered into between you and the

22   Government.  I would ask Mr. Rosen to outline the

23   provisions of that agreement for you and for the Court.

24           MR. ROSEN:  Your Honor, the Defendant has agreed

25   to plead guilty to two counts here.  Count I of the

information is conspiracy to commit mail fraud, honest

services mail fraud; and Count II is conspiracy to

commit money laundering under the sort of disguise and

conceal theory of money laundering.  Both counts have

essentially the same punishment, incarceration --

THE COURT:  We'll get to the penalties in a

minute, Mr. Rosen.

MR. ROSEN:  Okay.

THE COURT:  You can skip over that.

MR. ROSEN:  Sure.  The parties agree that the

sentencing guidelines are as follows:  A base offense

level of 7, increased by 14 because the gain or loss

from the offenses of conviction are more than $550,000,

less than 1.5 million; and an increase of two, which is

due to the money laundering, which gives an offense

level of 23; minus three for acceptance would be an

expected guidelines of 33 to 41 months.

THE COURT:  So total offense level of 20,

Criminal History Category I yields a 33- to 44-month

range; is that right?

MR. ROSEN:  That's what the Government believes

at this time.

THE COURT:  Okay.

MR. ROSEN:  The Government will recommend as

part of the plea agreement incarceration at the low end

1    of the guidelines, as calculated; a fine at the low end

2    of the guidelines; 36 months of supervised release; the

3    standard special assessment of $200; and forfeiture, as

4    set forth in the plea agreement.

5          Would you like me to do the waiver now or --

6          THE COURT:  You can do that, yes.

7          MR. ROSEN:  Okay.  Essentially, the waiver

8    applies to Mr. Riddell.  He's prohibited from appealing

9    his conviction subject to essentially claims of

10   ineffective assistance or prosecutorial misconduct.

11   He also agrees not to file a direct appeal of any

12   sentence of imprisonment of 41 months or less, and

13   the US Attorney's Office will not appeal any

14   imprisonment sentence of 33 months or more.

15         The Court of course is not bound by this plea

16   agreement.

17         In terms of forfeiture, the Government expects

18   to file for a money judgment of $239,449.42.  That

19   amount is equal to the proceeds the Defendant got from

20   committing the fraud that we're here for today.

21         And he agrees to provide all the information for

22   a presentence report.

23         THE COURT:  All right.  Are those the terms of

24   your plea agreement with the Government, as you

25   understand them, Mr. Riddell?

1    THE DEFENDANT:  Yes, they are, Your Honor.

2    THE COURT:  Now, other than written agreements

3  with the Government, has anyone made any promise or

4  assurance to you of any kind in an effort to make you

5  enter a plea of guilty in this case?

6    THE DEFENDANT:  No, Your Honor.

7    THE COURT:  Do you understand that the Court

8  does not have to accept or follow the Government's

9  recommendation or your unopposed request, and if it

10  does not, you nevertheless will still be bound by your

11  plea of guilty and will have no right to withdraw it?

12  Do you understand that?

13    THE DEFENDANT:  I do understand that.

14    THE COURT:  Now, do you understand the offense

15  to which you are pleading guilty is a felony, and if

16  that plea is accepted, you'll be judged guilty of that

17  offense and that such adjudication may deprive you of

18  valuable civil rights such as the right to vote, the

19  right to hold public office, the right to serve on a

20  jury, the right to possess any kind of firearm?  Do you

21  understand that?

22    THE DEFENDANT:  I do, Your Honor.

23    THE COURT:  All right.  Now, I would ask

24  Mr. Rosen to inform the Defendant of the maximum

25  possible penalties that he faces in connection with

1 these charges and if there are any mandatory minimums.

2 MR. ROSEN: Judge, there are no mandatory

3 minimums here. Both counts have the same penalty,

4 incarceration for 20 years; supervised release for

5 three years; a fine of $250,000 or twice the gross gain

6 or loss, whichever is more; a special assessment of

7 $100 for each count; restitution; and the forfeiture I

8 mentioned earlier.

9 THE COURT: All right. Mr. Riddell, do you

10 understand the possible consequences of your plea here

11 this afternoon?

12 THE DEFENDANT: I do, Your Honor.

13 THE COURT: Now, under the Sentencing Reform Act

14 of 1984, the United States Sentencing Commission issued

15 guidelines for Judges to follow when imposing sentences

16 in criminal cases. Have you and your attorney,

17 Mr. Stechschulte, discussed how those guidelines will

18 apply in your specific case?

19 THE DEFENDANT: We have, Your Honor.

20 THE COURT: And do you understand that a

21 decision of the United States Supreme Court back in

22 2005 rendered the United States guidelines advisory

23 rather than mandatory, meaning that I have the

24 discretion to sentence you anywhere in the range set

25 forth in the statute governing the crime to which you

1  plead guilty and that I am not required to sentence you

2  within the range prescribed in the sentencing

3  guidelines or even pursuant to the factors contained in

4  those guidelines.  Do you understand that?

5          THE DEFENDANT:  I do understand that,

6  Your Honor.

7          THE COURT:  And do you also understand that the

8  Court will not be able to determine even what advisory

9  guideline applies in your case until after a

10  presentence report has been prepared for me by the

11  Probation Department and both you and the Government

12  have had a chance to challenge the facts that are set

13  forth in that report?  Do you understand that?

14          THE DEFENDANT:  I do, Your Honor.

15          THE COURT:  And also, do you understand that,

16  after it has been determined what the advisory

17  guideline is in this case, the Judge, and in this case,

18  that means me, has the authority in some circumstances

19  to impose a sentence that is more severe or less severe

20  than those called for in the guidelines?  Do you

21  understand that?

22          THE DEFENDANT:  I do, Your Honor.

23          THE COURT:  And do you understand that, under

24  some circumstances, either you or the Government can

25  appeal my sentence to a higher court, but in this case,

1   you've already agreed that any sentence of 41 months or
2   less you will not appeal?  Do you understand that?
3              THE DEFENDANT:  I do, Your Honor.
4              THE COURT:  Nor can the Government appeal any
5   sentence that's 33 months or more?
6              THE DEFENDANT:  I understand that, Your Honor.
7              THE COURT:  Okay.  And, finally, do you
8   understand that parole has been abolished, and if you
9   are sentenced to be imprisoned, you will not be
10  released on parole?  Do you understand that?
11             THE DEFENDANT:  I do, Your Honor.
12             THE COURT:  All right.  Then, Mr. Riddell, do
13  you understand generally that you have a right to plead
14  not guilty to any charge you face and to persist in
15  that plea and that you would then have the right to a
16  trial by jury during which you'd have the right to be
17  represented by a lawyer in your defense, you'd have the
18  right to see and hear all of the witnesses and have
19  them cross-examined in your defense, you'd have the
20  right on your own part to decline to testify unless you
21  voluntarily agree to do so, and you'd have the right to
22  the issuance of subpoenas, or compulsory process, to
23  compel the attendance of witnesses to testify in your
24  defense?  Do you understand all of that?
25             THE DEFENDANT:  I do, Your Honor.

1    THE COURT:  And do you further understand that,

2    by entering a plea of guilty, if that plea is accepted

3    by this Court, there will be no trial and you will have

4    waived or given up your right to a trial by jury as

5    well as those other rights associated with such a trial

6    that I just described?  Do you understand that?

7    THE DEFENDANT:  I do, Your Honor.

8    THE COURT:  All right.  Then, Mr. Rosen, will

9    you please inform the Defendant of exactly what facts

10   the Government would prove if this matter were to go to

11   trial.

12   MR. ROSEN:  If the matter were to go to trial,

13   Your Honor, the Government would prove that the ACT is

14   a non-profit organization headquartered in Iowa that

15   administers the ACT, which is widely used throughout

16   the college admissions process.  The ACT is graded on a

17   scale of 1 to 36, with 36 being a perfect score.

18   The College Board is a non-profit headquartered

19   in New York, together with Educational Testing Service,

20   or ETS.  The College Board develops and administers the

21   SAT, again, which is used as part of the college

22   admissions process.  The SAT is scored on a scale of

23   400 to 600 now, and it used to be scored on a scale of

24   600 to 2,400.

25   Both the SAT and the ACT exams are sent to and

from testing sites via interstate carriers such as Federal Express or UPS, but the SAT and ACT exams used paid test administrators to administer the exam, and these test administrator owe fiduciary duties to the SAT and College Board as part of the test administration process.  The test scores and materials are the property of the SAT and the College Board.

From approximately 2011 through February of 2019, the Defendant, Mark Riddell, together with Rick Singer and others, conspired to cheat on the SAT and the ACT college entrance exams with the goal of artificially boosting the scores of students so as to allow them to gain admission to elite universities nationwide.

The scheme took different forms over the years, and Riddell engaged in the scheme because he was paid to do it by Singer and his clients.  At first, he was paid in cash by Singer.  Later, Riddell received checks from Singer paid out of Singer's Key Worldwide charity, which is a 501c3 organization, and Singer used this to disguise the nature and source of the proceeds and the purpose of the moneys.

The scheme began in 2011 when Riddell helped a student at a private school in Miami, Florida, cheat on the SAT while he was being paid to proctor her exam.

In December, 2011, Riddell flew to Vancouver, Canada, where, with the help of a falsified identification provided to him by Rick Singer, he took the SAT exam on behalf of a son of charged Defendant David Sidoo who later was accepted to Chapman University in California and also the University of Southern California later on.  In June, 2012, Riddell flew back to Vancouver where he took a high school graduation exam on behalf of the same student, again, using the fake ID.

On December 1st, 2012, in Orange County, California, Riddell flew in from Florida and took the SAT exam on behalf of a second son of Sidoo.  Riddell scored nearly a perfect score on Sidoo's SAT exam, and these scores were then used by Sidoo's son to gain him admission and enrollment at the University of California at Berkeley.  Riddell also posed as a proctor or exam-reader, which allowed him to help a student cheat on the SAT exam at a private school in northern California, in the Bay area.

In October, 2015, Riddell flew from Tampa, Florida, to San Francisco to proctor the SAT exam of the daughter of Elizabeth and Manuel Henriquez, both of whom are charged Defendants.  During the exam, which was held in a separate room due to the student's alleged disabilities, Riddell provided the student with

1    answers on the SAT.  After the exam, Elizabeth

2    Henriquez picked up Riddell and her daughter, and they

3    celebrated their successful cheating in the car ride to

4    Riddell's hotel.  These scores helped the Henriquezes'

5    daughter gain admission to and enrollment at Georgetown

6    University.

7         The cheating scheme then evolved.  Singer

8    bribed test administrators at two testing sites,

9    one in Los Angeles and one in Houston, Texas,

10   charged Defendants Igor Dvorskiy in Los Angeles and

11   Niki Williams in Houston.  Essentially, the scheme

12   worked as follows:  Riddell would fly to Los Angeles or

13   Houston, proctor the students' exams, and then after

14   the student had left, Riddell would correct the

15   students' answers.  Riddell was paid approximately

16   $10,000 each time.

17        As an example, in December of 2017, Riddell flew

18   to Los Angeles where he proctored the ACT exam of the

19   son of charged Defendant Bill McGlashan.  Riddell

20   corrected the student's exam answers after the ACT

21   test, earning the student a 34, which is a score in the

22   top one or two percent in the nation.  These scores

23   were then sent to a variety of colleges as part of the

24   admissions process, including Northeastern.

25        As another example, in February, 2019, Riddell

1 cheated on the ACT on behalf of the daughter of charged

2 Defendant Michelle Janavs. Riddell corrected the

3 answers on the exam of her daughter, earning her also a

4 score of 34 on the ACT exam. In October of 2017,

5 Riddell had cheated on the ACT exam on behalf of

6 Janavs' older daughter as well, earning her a 32. He

7 was paid $10,000 for each of these exams.

8 At times the students were in on it. As an

9 example, the younger daughter of the Henriquezes flew

10 to Houston to take the ACT exam in October of 2016.

11 There the student, together with another student, took

12 the ACT exam as a group with Riddell. They gave each

13 other the answers and plotted how to escape detection

14 by purposely putting wrong answers on their own ACT

15 exam.

16 In total, Riddell earned more than $200,000

17 cheating on college entrance exams more than 25 times

18 in Canada, Texas and California as well as other places

19 over the course of the cheating scheme.

20 THE COURT: Mr. Riddell, do you have anything to

21 add to what Mr. Rosen says that the Government would be

22 able to prove if this matter were to go to trial?

23 THE DEFENDANT: No, Your Honor, I do not.

24 THE COURT: Do you disagree with anything he

25 says the Government would be able to prove?

1      THE DEFENDANT:  No, Your Honor, I do not.

2      THE COURT:  Okay.  Then, I would ask the Deputy

3   Clerk to inquire of the Defendant as to how he now

4   wishes to plead.  And Mr. Riddell, will you please

5   stand.

6      THE CLERK:  Mr. Riddell, Count I of the

7   two-count information charges you with conspiracy to

8   commit mail fraud and honest services mail fraud, in

9   violation of Title 18 of the United States Code,

10  Section 1349.  How do you wish to plead to Count I,

11  guilty or not guilty?

12     THE DEFENDANT:  Guilty.

13     THE CLERK:  Count II of the two-count

14  information charges you with conspiracy to commit

15  money laundering, in violation of Title 18 of the

16  United States Code, Section 1956H.  How do you wish to

17  plead to Count II, guilty or not guilty?

18     THE DEFENDANT:  Guilty.

19     THE CLERK:  Thank you.  You may be seated.

20     THE COURT:  That being so, it is the finding

21  of the Court, in the case of the United States v.

22  Mark Riddell, that the Defendant is fully competent and

23  capable of entering an informed plea and that his plea

24  of guilty is a knowing and voluntary plea supported by

25  an independent basis in fact containing each of the

1   essential elements of the offenses charged.  His plea

2   is therefore accepted, and he is now judged guilty of

3   those offenses.

4         Mr. Riddell, a written presentence report will

5   be prepared for me by the Probation Department.  You'll

6   be asked to give information for that report.  Your

7   attorney may be present if you wish.  Both you and your

8   attorney will be given an opportunity to read that

9   presentence report before the sentencing hearing, and

10  at the sentencing hearing itself, not only your

11  attorney, but you will be afforded the opportunity to

12  speak; do you understand that?

13        THE DEFENDANT:  I do understand that,

14  Your Honor.

15        THE COURT:  All right.  Then, we'll schedule the

16  sentencing for Thursday, July 18th, 2019, at 3:00 p.m.

17  in this Courtroom.

18        Any known conflicts, Mr. Stechschulte?

19        MR. STECHSCHULTE:  None that I'm aware of.

20        THE COURT:  Mr. Rosen?

21        MR. ROSEN:  No, Your Honor.

22        THE COURT:  Then it will be Thursday, July 18th,

23  2019, at 3:00 p.m.

24        I understand the Defendant is to be released on

25  the same conditions as up to now; am I correct,

1    Mr. Rosen?

2            MR. ROSEN:  You are.

3            THE COURT:  Then, just as a reminder,

4    Mr. Riddell, you are released on a $50,000 unsecured

5    bond with the following conditions:  You are to report

6    to the United States Probation and Pretrial Services,

7    as directed; you are to continue or actively to seek

8    employment; you are to surrender any passport to the

9    United States Probation and Pretrial Services Office

10   and not obtain a new one; and you are not to obtain

11   other travel documents while this case is pending.

12           Your travel is restricted to the United States,

13   and any travel away from home is permitted with advance

14   notice, as required by the United States Probation

15   Officer.  You are to avoid all contact, direct or

16   indirect, with any person who is or may be a victim or

17   potential witness in the investigation or prosecution,

18   including co-Defendants, except in the presence of

19   counsel.

20           You are to refrain from use or unlawful

21   possession of a narcotic drug or other controlled

22   substance defined in Title 21 of the United States

23   Code, Section 802, unless prescribed by a licensed

24   medical practitioner; you are to refrain from the

25   excessive use of alcohol; to submit to any testing

1    required by Pretrial Services or by supervising

2    Officers to determine whether you are using a

3    prohibited substance.  Testing may be used with random

4    frequency and may include urine testing, the wearing of

5    a sweat patch, a remote alcohol testing system and/or

6    any form of prohibited substance screening or testing.

7         You are to refrain from obstructing or

8    attempting to obstruct or tamper in any fashion with

9    the efficiency and accuracy of any substance abuse

10   testing or monitoring which is required as a condition

11   of your release.

12        You are to report any contact with law

13   enforcement within 24 hours.  You are to refrain from

14   possessing any firearm, destructive device or other

15   dangerous weapon.  And you are to obey all statutory

16   conditions of release.

17        Do you understand all of that?

18        THE DEFENDANT:  I do, Your Honor.

19        THE COURT:  Now, failure to appear, as required,

20   at your sentencing on Thursday, July 18th, 2019, at

21   3:00 p.m., is a criminal offense for which you could be

22   sentenced to imprisonment, and all of the conditions on

23   which you are released up to now and that I just

24   described for you continue to apply, and penalties for

25   violating those conditions can be severe; do you

understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Is there any further business, then, to come before the Court in these proceedings, Mr. Stechschulte?

MR. STECHSCHULTE:  No, Your Honor.

THE COURT:  Mr. Rosen?

MR. ROSEN:  No, Your Honor.

THE CLERK:  All rise.  Court is in recess.

(Adjourned, 3:02 p.m.)

1

2

3                    C E R T I F I C A T I O N

4

5

6

7

8

9

10        I, Debra D. Lajoie, RPR-FCRR-CRI-RMR, do

11   hereby certify that the foregoing pages are a true and

12   accurate transcription of my stenographic notes in the

13   above-entitled case.

14

15

16

17

18

19              /s/ Debra D. Lajoie

20

21

22

23

24         4/26/19

25